UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
----------------------------------------------------------------x

BUCK FOSTON'S NEW BRUNSWICK, LLC,   :
LAWRENCE D. BLATTERFEIN, and FOSTON'S :
NEW BRUNSWICK REALTY, LLC,         :    Index No.
                                         :
                 Plaintiffs,       :
                                         :
       - against -         :    **COMPLAINT**
                                         :
JAMES M. CAHILL, Individually and as Mayor of :    **JURY TRIAL DEMANDED**
the City of New Brunswick, New Jersey, and CITY :
OF NEW BRUNSWICK, NEW JERSEY,     :
                                         :
                 Defendants.     :
----------------------------------------------------------------x

      Plaintiffs Buck Foston's New Brunswick, LLC ("Buck Foston's"), Lawrence D.

Blatterfein ("Blatterfein"), and Foston's New Brunswick Realty, LLC ("Foston's Realty")

(together, "Plaintiffs"), by and through their counsel, complain against Defendants James M.

Cahill ("Mayor Cahill") and the City of New Brunswick, New Jersey ("New Brunswick" or the

"City" and, together with Mayor Cahill, "Defendants") as follows:

### INTRODUCTION

     1.     Plaintiff Lawrence D. Blatterfein is a resident of New Jersey and long-standing

business owner in New Brunswick who has generated substantial tax revenues for the City and

the State of New Jersey over the past 30 years.  In the spring of 2009, Blatterfein sought to

further his investment in the New Brunswick community by developing an upscale restaurant

and sports bar named "Buck Foston's."  For avid sports fans, the play on words "Buck Foston's"

is evocative of a century-old sports rivalry between the New York and Boston sports teams,

including between the New York Yankees and the Boston Red Sox, the New England Patriots

and the New York Jets and New York Giants, and between the Boston Bruins and the New York

Rangers.  In selecting the name "Buck Foston's," Blatterfein intended to attract to his restaurant the large population of New York sports fans in and around New Brunswick.

2.      Rather than encourage economic development in New Brunswick, Defendants have intentionally derailed Blatterfein's project that promises to bring at least 75 additional jobs (and tax revenues) to the City because they don't approve of the name "Buck Foston's."  In fact, Mayor Cahill (who, upon information and belief, is a Red Sox fan), said he thought that the name was "vulgar," but had no objection to the connotations associated with "Cluck U" – a fast food restaurant that has its roots in New Brunswick.[1]  Plaintiffs' use of the name "Buck Foston's" constitutes protected speech under the United States and New Jersey Constitutions.  By their actions, as described below, Defendants have put their own misguided sense of purported morality and the City's policy above Plaintiffs' fundamental right of free speech and above the economic interests of the people of New Brunswick.

3.      Blatterfein is a successful businessman with nearly three decades of experience in the restaurant and bar industry.  For nearly 30 years, Blatterfein has held a liquor license issued by the City of New Brunswick to operate Blatterfein's other bar, the "Knight Club."[2]  Blatterfein's liquor license for the Knight Club has been renewed annually by the City of New Brunswick.  Indeed, he received his most recent renewal less than two weeks ago on June 15, 2011.  In connection with the Buck Foston's project, Blatterfein sought to transfer an existing liquor license that he acquired from a third party to Buck Foston's.  Although the City officials principally responsible for administering the application process informed Plaintiffs that the process of obtaining approval for the transfer would take at most approximately eight to ten

---

[1]      Consider also the title of the super popular children's book for parents "Go the F*** to Sleep" by Adam Mansbach.  As of June 22, 2011, "Go the F*** to Sleep" is the Number 1 Bestseller on Amazon.com in the "Parenting & Families" category.

[2]      Knight Club is a play off the mascot of the local university, Rutgers University.

weeks,[3] the process has completely stalled, and City officials have refused to respond to Plaintiffs' correspondence, e-mails or telephone calls regarding the status of Plaintiffs' liquor license transfer application. As a result, Plaintiffs risk losing their funding for the Buck Foston's project and daily incur significant financial penalties, which threaten the continued vitality of the project. Defendants' ongoing refusal to take action on Plaintiffs' application based solely on a name, which constitutes protected speech and expression under both the Federal and New Jersey constitutions, is a clear violation of federal and state law, and requires vindication by this Court.

4.      This action seeks a declaration that Defendants' intentional delay and refusal to process Plaintiffs' liquor license transfer application is unconstitutional and violates the First and Fourteenth Amendments to the United States Constitution and Article I, Paragraph 6, of the New Jersey Constitution. It also seeks to permanently enjoin Defendants from denying Plaintiffs' application because of the name of the proposed establishment. Finally, this action seeks damages for Plaintiffs' past and continued loss of their constitutional rights and other financial losses sustained as a result of Defendants' wrongful deprivation of Plaintiffs' constitutional rights.

## PARTIES

5.      Plaintiff Lawrence D. Blatterfein is an individual and a resident of the State of New Jersey, who resides in Belle Mead, New Jersey. Blatterfein is a successful businessman in the City of New Brunswick, New Jersey. In the spring of 2009, he conceived of the concept of creating an upscale restaurant and sports bar which would provide exceptional service and

---

[3]      Contrary to the representations of the City officials, Blatterfein was told by counsel to the Director of the State Alcohol Beverage Control Division that the application should take no longer than two weeks to process because Blatterfein already holds a City of New Brunswick liquor license and has been in good standing in the New Brunswick community for such a long period of time.

quality food offerings using the name "Buck Foston's," a play on the rivalry between the New

York and Boston sports teams.

6.     Buck Foston's New Brunswick, LLC is a New Jersey Limited Liability Company

with its principal place of business at 15 Walton Court, Belle Mead, New Jersey 08502.  Buck

Foston's New Brunswick, LLC was formed for the purpose of operating Buck Foston's

restaurant and sports bar in New Brunswick, New Jersey.  The New Jersey Secretary of State

raised no objection to the name "Buck Foston's New Brunswick, LLC" when the limited liability

company was formed and registered in New Jersey.

7.     Foston's New Brunswick Realty, LLC is a New Jersey Limited Liability

Company with its principal place of business at 15 Walton Court, Belle Mead, New Jersey

08502.  Foston's New Brunswick Realty, LLC was formed to purchase and hold the real estate

upon which Buck Foston's restaurant and sports bar will be operated in New Brunswick, New

Jersey.

8.     Defendant James M. Cahill is an individual and the current Mayor of the City of

New Brunswick, New Jersey.  Mayor Cahill is being sued personally and in his official capacity

as the Mayor of the City of New Brunswick.  Upon information and belief, Mayor Cahill is a

life-long resident of the City of New Brunswick.  Mayor Cahill has served continuously as the

Mayor of New Brunswick for last 20 years and, prior to his election in 1991, served as Assistant

City Attorney from 1980 to 1991.

9.     Defendant City of New Brunswick, New Jersey, is an municipality located in the

County of Middlesex, New Jersey, and is a political subdivision.

## JURISDICTION AND VENUE

10.     This action arises under the Constitution and laws of the United States.  The Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.  Pursuant to 42 U.S.C. § 1367, this Court may also exercise supplemental jurisdiction over Plaintiffs' claims under the New Jersey State Constitution. Plaintiffs' claims for damages are authorized by 42 U.S.C. § 1983.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the parties reside in this District and the events or omissions giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

### Blatterfein Is A Successful Restaurateur and Business Owner

12.     Blatterfein is a prominent local businessman with nearly thirty years experience operating restaurants and bars in New Brunswick, New Jersey, including the highly-successful Knight Club bar, which has been operating in New Brunswick since 1982.

13.     During that time, he has employed hundreds of local residents and paid taxes to the City, the State of New Jersey, and the United States treasuries.  Because the businesses that Blatterfein operates are privately owned, the money generated by those businesses stays largely in the New Brunswick area and contributes to the local economy.

14.     Blatterfein and his businesses have supported the local economy and made significant contributions to the community, including contributions to the local police and fire departments and the local Rutgers University community.

**The Buck Foston's Project**

15.     Blatterfein had long desired to establish an upscale restaurant and sports bar in the New Brunswick area.  In the spring of 2009, he identified an ideal property (the "Property"):  a lot formerly occupied by a Bennigan's restaurant located at the intersection of Routes 1 and 18 in New Brunswick, immediately off Exit 9 of the New Jersey Turnpike.  The Property, which is not located near any residential areas (and on the outskirts of the City), had been closed and shuttered for at least three years.  The Property consists of a single, stand-alone building with a large parking area for customers and is ideally suited for the high-end restaurant and sports bar that Blatterfein wants to develop in New Brunswick.

16.     The Property is in a strictly commercial location in a high-traffic area, and not part of any "downtown" or historical area that the City might have an interest in preserving.  In fact, due to its location near a major highway and at the intersection of two major roadways, it is one of many businesses that passersby may or may not notice.

17.     In or about November 2009, Blatterfein signed a contract of sale with the owner of the Property, which had an anticipated closing date in December 2009.

18.     In order to purchase the Property, Plaintiffs arranged for bank financing in the form of a mortgage under the SBA 7A program.  The Property is obviously essential for collateralizing the secured loan(s).  The bank issuing the loan has required as a condition of the closing of the sale that Plaintiffs procure from the City the necessary liquor license to operate a restaurant and bar at the location.  The bank refuses to provide Plaintiffs with the financing necessary to close the real estate sale unless and until Plaintiffs receive such a license from the City.

19.     Because Blatterfein wanted his upscale restaurant and sports bar concept to tap into the large sports-oriented population in and around New Brunswick, New Jersey, Blatterfein

decided to call the restaurant and bar "Buck Foston's." The name "Buck Foston's" has no particular meaning, and is innocuous on its face. It is certainly not offensive. Indeed, upon information and belief, a cursory review of birth and death records in the United States reveals that at least a dozen individuals in the United States had or have the name "Buck Foston." The name is certainly not offensive, vulgar, or obscene in any way. Rather, it is intended to evoke an emotional response in prospective patrons. It is an intended "play on words" evoking the nearly century-old sports rivalry between New York and Boston, Massachusetts, including the longstanding rivalry between the New York Yankees and Boston Red Sox baseball teams, the New York Knicks and Boston Celtics basketball teams, and the New York Jets/Giants and New England Patriots football teams.

20.     A copy of the logo that Plaintiffs intend to use for the restaurant and sports bar is attached hereto as Exhibit A. Plaintiffs' logo for Buck Foston's is tasteful and appropriate and demonstrates the look and feel that the establishment's signage will convey to the general public.

21.     The bar and restaurant business is highly competitive. It is critical for such businesses to differentiate themselves from their competitors. Creative marketing is one tried and true way to differentiate one's business from another. Plaintiffs intend to differentiate themselves in the marketplace by providing customers with an upscale atmosphere and serving high quality food items with a high level of service. Of course, first impressions are highly important when attempting to draw in first-time customers. Plaintiffs expect that the name "Buck Foston's" will attract first-time customers and engender loyalty among patrons by appealing to their love of sports and their potential affiliation with the New York side of the rivalry with Boston. Plaintiffs believe that the name "Buck Foston's" will resonate with local sports fans and convey to them that Buck Foston's is an establishment that understands and

caters to their tastes and loyalties.  Obtaining a "foot in the door" with this important demographic will be critically determinative of the success of the Buck Foston's project.

22.     Despite the economic downturn that hit New Jersey (and the rest of the nation) in 2008-2009, Plaintiffs have undertaken significant work and incurred significant costs in connection with developing the Buck Foston's project.  For example, Plaintiff has commissioned Phase 1 and Phase 2 environmental reports for the property, commissioned engineers in connection with the remodeling of the building and the reconstruction of the parking lot area, and engaged architects to prepare plans for the renovation.  Absent the required liquor license, all of these considerable expenses incurred by Plaintiffs will be for naught.

23.     Upon the approval of the liquor license transfer, Plaintiffs will renovate the Property.  Plaintiffs' current plans call for a renovation of the kitchen areas of the building and a complete demolition and reconstruction of the interior portion of the building that will be occupied by patrons.  This will be a significant commercial construction project in New Brunswick, and will involve the complete demolition and reconstruction of all restrooms and customer areas, a complete remodeling and reconstruction of the exterior of the building, new landscaping and the ripping out and repaving of the entire parking area.  The project will convert an abandoned building into an attractive, inviting business that will improve the look of the City and convey to passersby that New Brunswick is "open for business."  The reconstruction process will employ dozens of tradesman, many of whom inevitably will be City residents.  Thus, even before it opens, the development of the Buck Foston's project will spur the City's downtrodden economy and boost morale.

24.     Once the restaurant and sports bar are operational, Plaintiffs anticipate hiring approximately 75 employees, including chefs, kitchen staff, bar and wait staff, security and

maintenance employees.  If the project is successful, it is expected to generate significant tax and other revenues for the City and the State of New Jersey.

**The Liquor Licensing Process**

25.     In order to operate a bar and restaurant within the City, a business must obtain a liquor license.  In the Plaintiffs' case, this meant acquiring a liquor license from a third party that no longer needed the license.

26.     Upon signing the contract for the purchase of the Property, Plaintiffs immediately initiated the process of obtaining the necessary liquor license to operate Buck Foston's. Plaintiffs purchased a New Brunswick liquor license from an existing bar and restaurant, Sapporo restaurant ("Sapporo"), and initiated the process required to transfer the license from Sapporo to Buck Foston's for use by Plaintiffs.  Plaintiffs anticipated that this process would be uneventful given Blatterfein's long and accomplished history in New Brunswick, and the fact that he already holds a liquor license from the City of New Brunswick for the Knight Club.

27.     The license transfer process requires a background check to be performed by the New Brunswick City Police Department.  Upon information and belief, background checks are a routine part of the business of the New Brunswick Police Department.

28.     On or about April 4, 2011, Blatterfein requested that the New Brunswick Police Department initiate a background check on him and his partner Jerry Sorrentino ("Sorrentino") to facilitate the transfer of the liquor license from Sapporo.  Blatterfein was informed by the City that the license transfer process, including the necessary background check, would take no longer than eight to ten weeks.  Upon information and belief, the process should have taken no more than two weeks to complete.

29.     There is nothing in Blatterfein's background that would complicate or delay the completion of a background check by the New Brunswick Police Department, or that would disqualify him to hold the liquor license required to operate Buck Foston's.  Blatterfein has held a New Brunswick liquor license in connection with the Knight Club since 1982, and the Knight Club has never been cited for a violation throughout its nearly thirty years of operation.  Indeed, the New Brunswick City Council has renewed that license each year for the past twenty-nine years without any complications or delay.  In fact, Blatterfein's liquor license for the Knight Club was renewed as recently as this month, June 2011, by the New Brunswick City Council.  Likewise, Sorrentino is a former police officer with a perfectly clean record.

30.     Blatterfein and his representatives have communicated with the New Brunswick Police Department in connection with the requested background check and have fully cooperated with the process by responding to requests for information, including providing several years' tax returns and bank statements to the New Brunswick Police Department.  The New Brunswick Police Department has never raised any concerns concerning Blatterfein's background with Blatterfein or his representatives, and, upon information and belief, the New Brunswick Police Department has all of the information from Blatterfein that it requires to complete his background check, and nothing further is required from Blatterfein to complete that process.

31.     Although Blatterfein initiated the background check more than twelve weeks ago, he has not received the results of the background check, or had any communications with the New Brunswick Police Department regarding the background check since on or before May 19, 2011.  Blatterfein and his representatives have initiated multiple calls, emails, and correspondence to the New Brunswick Police Department to inquire about the status of the background check, but the New Brunswick Police Department refuses to respond to any of those

10

inquiries.  Upon information and belief, Mayor Cahill, as the highest elected official in the City, has power and control over the New Brunswick Police Department.  Upon information and belief, and as discussed below, absent interference with the background check process from within the Mayor's office, the background check would have been completed over a month ago.

32.      Upon information and belief, once the New Brunswick Police Department approves the background check, the transfer application is presented to the New Brunswick City Council (the "City Council") for its approval.  Upon information and belief, the members of the City Council have no objection with Plaintiffs' request for transfer of the liquor license, and Plaintiffs and all other persons and entities associated with the Buck Foston's project are fully qualified to receive the City Council's approval for the transfer.

33.      Upon information and belief, the City Council meets the first and third Wednesday of each month.  A party that wants to present a matter for the City Council's consideration must publish notice of the matter to be addressed for two consecutive weeks prior to the date of the scheduled City Council meeting.  Although the City Council had indicated to Plaintiffs that it could hear their application at or before the City Council's July 6, 2011 hearing, Plaintiffs' are not currently on the schedule for the July 6 meeting.  Upon information and belief, absent interference from within the Mayor's office and the New Brunswick Police Department, Plaintiffs' application would have been timely processed and reviewed by City officials when it was submitted on April 4, 2011, and placed on the agenda for the July 6, 2011 City Council meeting (if not on the agenda for an ever earlier City Council meeting).

**The Mayor's Interference With The Background**
**Check And Liquor License Transfer Approval Processes**

34.      Mayor Cahill is the highest ranking elected official in the City of New Brunswick. He is the chief executive and administrative officer of the City.  Upon information and belief,

11

Mayor Cahill oversees and controls all of the executive functions of the City, including, among others, the Police and Fire Departments, the Department of Public Works and the Planning & Development Department.

35.     In or about the first week of April 2011, Blatterfein's representative communicated with Mayor Cahill about Blatterfein's plans for the Buck Foston's project. Mayor Cahill was generally positive about the project and the economic development it would bring to New Brunswick, but expressed concern about the name "Buck Foston's."

36.     Thereafter, on or about April 20, 2011, Blatterfein met with Mayor Cahill to discuss the project. At that meeting, Mayor Cahill complimented Blatterfein's skills as a businessman and expressed his approval for building a restaurant and sports bar at the Property, but objected to the name "Buck Foston's." Mayor Cahill said that he found the name to be "vulgar" and inappropriate for a business in New Brunswick. Mayor Cahill had no objection to the connotations associated with "Cluck U" – a fast food restaurant that has its roots in New Brunswick. Mayor Cahill told Blatterfein that "chickens cluck." Mayor Cahill informed Blatterfein that he was a Boston Red Sox fan, but told Blatterfein that his affinity for the Boston baseball team did not play a role in his opposition to the name "Buck Foston's."

37.     Upon information and belief, Mayor Cahill has improperly interfered with the background check and the reviewing and processing of Plaintiffs' liquor license transfer application in violation of Plaintiffs' constitutional rights. Such interference can be attributed to, among other things, Mayor Cahill's enforcement of various policies against vulgarity in New Brunswick, including Subdivision O of Section 17.06.030 of the New Brunswick Code of Ordinances and the City's general policy or practice of prohibiting signs or advertising of an indecent or obscene nature. The Property includes a large (24 feet by 8 feet) sign visible from

12

the New Jersey Turnpike.  Plaintiffs intend to put the name "Buck Foston's" on that large, billboard-like sign.

38.     At all relevant times, Mayor Cahill (a 20 year incumbent) was the final decision-maker for defendant New Brunswick who has always had the capability of binding the City with his conduct in connection with the Plaintiffs' efforts to procure the liquor license transfer. Mayor Cahill's actions and omissions concerning Plaintiffs constituted and advanced the official policy, practice, and customs of the City.  Mayor Cahill created and then implemented an official policy and standard operating procedure accepted within the City to deny Plaintiffs the ability to acquire the Property because of Plaintiffs' desire to use the name "Buck Foston's."  Indeed, upon information and belief, Mayor Cahill's decision to deny Plaintiffs the ability to acquire the Property and to punish Plaintiffs for intending to and using the name "Buck Foston's" has become the official policy of the City.  Upon information and belief, the actions of the Mayor (and those acting under his direction and control) constitute a policy or custom of the City of New Brunswick of denying to its constituents the protected constitutional right of freedom of speech when the speech in question has been deemed by the Mayor to be "vulgar."

39.     Upon information and belief, Mayor Cahill has instructed the New Brunswick Police Department to delay or stop the necessary background check process.  Without the completion of the background check of Blatterfein and Sorrentino, the City Council may not approve the liquor license transfer.  Upon information and belief, Mayor Cahill has taken these actions based on his objection to the name "Buck Foston's," and for no other reason.  Upon information and belief, the New Brunswick Police Department has delayed or stopped the background check process with respect to Blatterfein either at the instruction of Mayor Cahill, or because it also disapproves of the name "Buck Foston's."  Mayor Cahill has authority over the

New Brunswick Police Department, for the Mayor oversees the police department and has the authority to hire, fire and promote as reflected by Mayor Cahill's press releases concerning the appointment, hiring and advancement of the City's police officers and firefighters.

40.     By virtue of Mayor Cahill's actions, conduct and harassment of Plaintiffs (through his conduct and the conduct of his agents in the New Brunswick Police Department), Mayor Cahill has caused and continues to cause Plaintiffs to suffer constitutional harm and incur damages.  Upon information and belief, Mayor Cahill has persuaded, cajoled and/or coerced the New Brunswick Police Department to act (or fail to act) in a manner which has denied Plaintiffs the opportunity to procure the critically-important governmental liquor license and, as a result, Plaintiffs have suffered a constitutional injury.  Mayor Cahill's constructive denial of Plaintiffs' license was unlawful and unconstitutional.

41.     Upon information and belief, absent the interference and control exercised by Mayor Cahill over the background check and liquor license transfer approval process, Blatterfein's background check and Plaintiffs' application for approval of the transfer of the liquor license would have been completed and approved over a month ago.  Any suggestion by Defendants that their delay and/or *de facto* denial of Plaintiffs' liquor license transfer application is for a reason other than Plaintiffs' desired expression of the "Buck Foston's" name is entirely contrived and pretextual.

42.     Because Mayor Cahill is the City's highest elected official, there is no one "above" Mayor Cahill who has the power to curtail his conduct with respect to Plaintiffs' background check and liquor license transfer application, which conduct was not reviewable by any other City official or any other body or agency in the City.

**Plaintiffs Have Suffered And Continue To Suffer Significant**
**Direct Injuries As A Result Of Defendants' Unconstitutional Conduct**

43.     Plaintiffs' financing in connection with the purchase of the Property is contingent on Plaintiffs obtaining the approval of the City Council to transfer the liquor license from Sapporo to Buck Foston's.

44.     Without approval of the license transfer, Plaintiffs cannot close on the Property and open their business.

45.     Because the background checks for Blatterfein and Sorrentino (which are a necessary precondition to the license transfer) and the City Council's approval of the license transfer have not occurred, Plaintiffs have not been able to close on the Property.

46.     Plaintiffs have been required to make significant additional payments to the seller of the property to extend the closing date on the contract for sale of the Property. First, Plaintiffs had to surrender the $75,000 deposit to the seller due to delays. Then, on or about May 15, 2011, the seller required a payment of $30,000 to extend the closing date for an additional 45 days. Commencing on or about July 1, 2011, Plaintiffs are required to make payments of $1,000 per day to further extend the closing date. Defendants have been informed by Plaintiffs of these requirements and are fully aware that Plaintiffs are incurring these costs on account of Defendants' delay in completing the background check and processing Plaintiffs' application to transfer the liquor license. Upon information and belief, Defendants believe that by punishing Plaintiffs financially, Plaintiffs will abandon their desire to use the name "Buck Foston's."

47.     Plaintiffs have also been required to suffer additional financial losses by virtue of having to retain attorneys and other professionals to assist them in addressing the unwarranted delay for the required background check and license transfer approval.

48.     Plaintiffs have incurred expenses relating to the renovation and development of the property, including engineering and architectural expenses and the costs of environmental reports.  Each of these costs will be lost if the City Council denies Plaintiffs' application for the license transfer due to Defendants' objection to the use of the name "Buck Foston's."

49.     In addition, the opportunity to operate a high-end restaurant and sports bar using the "Buck Foston's" concept at the location Plaintiffs have selected for the business is unique, valuable and mostly irreplaceable.  This opportunity will be forever lost to Plaintiffs if New Brunswick continues to effectuate Defendants' policy of barring Plaintiffs from using the "Buck Foston's" name.

50.     Defendants' delay in processing Plaintiffs' application for approval of the liquor license transfer has caused Plaintiffs significant damage.  Continued delay or, worse yet, the denial of the request on the constitutionally impermissible basis that Defendants disapprove of the name "Buck Foston's," will cause Plaintiffs additional monetary damages and irreparable injury in the form of the lost opportunity to operate Buck Foston's at the Property.

**CLAIMS FOR RELIEF**

**FIRST CAUSE OF ACTION**

**Violation of the United States Constitution**
**Freedom of Speech and Expression:  First and Fourteenth Amendments**
**(42 U.S.C. § 1983)**

51.     Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 50 as is fully set forth herein.

52.     The First Amendment to the United States Constitution provides that "Congress shall make no law … abridging the freedom of speech …." (the "Free Speech Clause").  The First Amendment, as incorporated through the Fourteenth Amendment, prohibits a state or any

political subdivision thereof from prohibiting the free exercise of speech and expression.  U.S. Const. amend. XIV, § 1.

53.     At all relevant times, Defendants' actions have been under color of state law and, by virtue of their actions, have deprived Plaintiffs of their rights secured by the United States Constitution.

54.     The acts of Defendants were done with the express purpose and intent of depriving Plaintiffs of their rights to freedom of speech and expression under the First Amendment to the United States Constitution.

55.     Defendants' conduct, in particular, Defendants' delay and refusal to process Plaintiffs' background check and liquor license transfer application based on Defendants' objection to the name "Buck Foston's," has deprived Plaintiffs of their right to engage in free speech in violation of the Free Speech Clause of the First Amendment as applied to the states and their political subdivisions under the Fourteen Amendment to the United States Constitution.

56.     As a direct and proximate cause of Defendants' violation of the Free Speech Clause of the First Amendment, including Defendants' failure to act on Plaintiffs' background check and liquor license transfer application, Plaintiffs have incurred and suffered significant damages, including but not limited to the loss of constitutional rights, loss of earnings, lost business profits and loss of business reputation and goodwill, as well as having to incur costs and attorneys' fees in seeking to protect their constitutional rights asserted herein.  Pursuant to 42 U.S.C. § 1983 and the common law, Plaintiffs are therefore entitled to damages for the deprivation of their constitutional rights and other losses sustained in amounts to which they are found to be entitled at trial.

57.     As a direct and proximate cause of Defendants' violation of the Free Speech Clause of the First Amendment, Plaintiffs have also suffered irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief.

58.     Plaintiffs have a substantial likelihood of success on the merits in regard to their claims against Defendants.  In light of the gravity of the unconstitutional restraint on speech and the irreparable harm that Defendants are causing, substantially greater harm will be caused by the failure to grant the requested relief than would be caused by the granting of such relief.

59.     The public interest weighs in favor of preventing the deprivation of constitutional rights, and any balance of harms between the parties weighs in favor of the Plaintiffs and against the Defendants.

## SECOND CAUSE OF ACTION

### Violation of the New Jersey Constitution
### Freedom of Speech Article

60.     Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 59 as is fully set forth herein.

61.     Article I, Paragraph 6 of the New Jersey Constitution provides:  "Every person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right.  No law shall be passed to restrain or abridge the liberty of speech or of the press" (the "Freedom of Speech Article").  N.J. Const. art. I, P6.

62.     At all relevant times, Defendants' actions have been under color of state law.

63.     The acts of Defendants were done with the purpose and intent of depriving Plaintiffs of their right to freedom of speech and expression under Article I, Paragraph 6 of the New Jersey Constitution.  This Article prohibits government actors from abridging the free speech rights of Plaintiffs.

64.     Defendants' violation of New Jersey's Freedom of Speech Article, including, Defendants' delay and refusal to process Plaintiffs' background check and application to transfer the liquor license from Sapporo to Buck Foston's based on Defendants' objection to the name "Buck Foston's," has deprived Plaintiffs of their right to engage in free speech and expression in violation of the New Jersey Constitution.

65.     As a direct and proximate cause of Defendants' violation of the Freedom of Speech Article in the New Jersey Constitution, Plaintiffs have incurred and suffered significant damages, including but not limited to the loss of constitutional rights, loss of earnings, lost business profits and loss of business reputation and goodwill, as well as having to incur costs and attorneys' fees in seeking protection of their constitutional rights asserted herein.  Plaintiffs are therefore entitled to damages for the deprivation of their constitutional rights and other losses sustained in amounts to which they are found to be entitled at trial.

66.     As a direct and proximate cause of Defendants' violation of New Jersey's Freedom of Speech Article, Plaintiffs have also suffered irreparable harm, including the loss of their constitutional rights, and are also entitled to declaratory and injunctive relief.

67.     Plaintiffs have a substantial likelihood of success on the merits in regard to their claims against Defendants.  In light of the gravity of the unconstitutional restraint on speech and the irreparable harm that Defendants are causing, substantially greater harm will be caused by the failure to grant the requested relief than would be caused by the granting of such relief.

68.     The public interest weighs in favor of preventing the deprivation of constitutional rights, and any balance of harms between the parties weighs in favor of the Plaintiffs and against the Defendants.

## THIRD CAUSE OF ACTION

### Declaratory Judgment

69.     Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 68 as is fully set forth herein.

70.     Plaintiffs desire to construct and operate an upscale restaurant and nightclub called "Buck Foston's" in a non-residential area on the outermost limit of the City of New Brunswick.  Defendants, through their agents, employees, representatives, boards, councils and departments, have wrongfully refused to process Plaintiffs' background check and application seeking to transfer the liquor license from Sapporo to Buck Foston's based on a constitutionally impermissible ground.  As a result, Plaintiffs have been unable to close on the property and have been forced to incur significant costs associated with Defendants' refusal to process the background check and liquor license transfer application.  Defendants' actions, including the actions of their agents, employees, representatives, boards, commissions, councils and departments, have been done in the course and scope of their official duties and under color of law.

71.     Upon information and belief, Defendants' delay and refusal to process Plaintiffs' background check and application to transfer the liquor license from Sapporo to Buck Foston's is due entirely to Defendants' wrongful objection to the name of the proposed business ("Buck Foston's").  Defendants' objection to the proposed name of the business is not content-neutral, has denied a livelihood to Plaintiffs, constitutes a means of harassing Plaintiffs, and is in violation of Plaintiffs' fundamental rights guaranteed by the First Amendment to the United States Constitution, as applied to the State of New Jersey by the Fourteenth Amendment, and the Freedom of Speech Article contained in the New Jersey Constitution.

20

72.     Defendants' actions including, but not limited to, their delay and inexplicable refusal to process Plaintiffs' background check and liquor license transfer application are unconstitutional under the First and Fourteenth Amendments to the United States Constitution and the Freedom of Speech Article contained in the New Jersey Constitution because Defendants' conduct:

a.      effectuates an impermissible prior restraint upon constitutionally protected speech, contrary to the First and Fourteen Amendments to the United States Constitution and the Freedom of Speech Article contained in the New Jersey Constitution;

b.      constitutes an impermissible and content-based restriction in violation of the First and Fourteen Amendments and the Freedom of Speech Article contained in the New Jersey Constitution;

c.      violates Plaintiffs' constitutional rights to free speech in that Defendants' restraint is overbroad and is not narrowly tailored, contrary to the First and Fourteen Amendments and the Freedom of Speech Article contained in the New Jersey Constitution;

d.      violates the First and Fourteenth Amendments to the United States Constitution and the Freedom of Speech Article contained in the New Jersey Constitution in that the restrictions that Defendants have imposed on Plaintiffs do not further a substantial governmental interest, are not narrowly tailored to directly advance any such interest, and are greater than is essential to further a permissible governmental interest;

e.  violates Plaintiffs' First Amendment and Fourteenth Amendment rights in that it unconstitutionally discriminates against Plaintiffs as compared to businesses and individuals engaged in substantially similar conduct and concerning similar speech and expression;

f.  unduly, impermissibly and unconstitutionally restricts the ability of Plaintiffs to engage in First Amendment protected activities with the City of New Brunswick; and

g.  violates the liberty and occupational liberty interests of Plaintiffs by prohibiting them from engaging in a lawful business within the City of New Brunswick.

73.  The Court has the authority to declare the right and other relations of the Plaintiffs and of the Defendants and should do so here.

74.  This Court should declare, for the reasons set forth above, that Defendants' delay and refusal to process Plaintiffs' background check and liquor license transfer application is unconstitutional and is in violation of the First and Fourteenth Amendments to the United States Constitution and Article I, Paragraph 6 of the New Jersey Constitution, and Defendants may not deny Plaintiffs' liquor license application (in whole or in part) because of the name of the proposed restaurant and sports bar, *i.e*, "Buck Foston's."

WHEREFORE, Plaintiffs Lawrence D. Blatterfein, Buck Foston's New Brunswick LLC, and Foston's New Brunswick Realty, LLC, respectfully request that the Court enter an Order:

(a)  declaring that Defendants' delay and wrongful refusal to process Plaintiffs' background check and liquor license transfer application is unconstitutional and is in violation of the First and Fourteenth Amendments to the United States Constitution and Article I, Paragraph

6 of the New Jersey Constitution, and Defendants may not deny Plaintiffs' liquor license application because of the name of the proposed restaurant and sports bar, *i.e.*, "Buck Foston's";

(b)      permanently enjoining Defendants and their officers, employees, agents and representatives, and all persons acting by, through, or for them, from denying Plaintiffs' liquor license transfer application because of the name of the proposed restaurant and sports bar, *i.e.*, "Buck Foston's";

(c)      awarding Plaintiffs' damages for the past and continued loss of their constitutional rights as set forth in this Complaint and other losses sustained in amounts to which they are found to be entitled at trial;

(d)      awarding Plaintiffs attorneys' fees and costs incurred herein pursuant to 42 U.S.C. § 1988; and

(e)      granting Plaintiffs such other and further relief as the Court deems just and proper.

Dated: June 27, 2011
        Montville, New Jersey

_____
Frank Pisano, III
NEEDLEMAN and PISANO
161 Main Road, P.O. Box 187
Montville, NJ 07045
Phone:  (973) 334-4422
Facsimile:  (973) 334-2866
fpiiiesq@optonline.net

OF COUNSEL:

Mark W. Smith, Esq.[4]
Noelle Kowalczyk, Esq.
SMITH VALLIERE PLLC
75 Rockefeller Plaza, 21st Floor
New York, New York 10019
Phone:  (212) 755-5200
Facsimile:  (212) 755-5203
msmith@svlaw.com
nkowalczyk@svlaw.com

*Attorneys for Plaintiffs*
*Lawrence D. Blatterfein,*
*Buck Foston's New Brunswick LLC,*
*and Foston's New Brunswick Realty, LLC*

---

[4]     Attorneys from Smith Valliere PLLC are not currently admitted to practice law in New Jersey and have not been admitted *pro hac vice* in the instant matter.  They will move to be admitted *pro hac vice* upon the assignment of a judge to this action in accordance with the Local Rules of the District of New Jersey.