Frank Pisano III, Esq.
NEEDLEMAN and PISANO
161 Main Road, P.O. Box 187
Montville, NJ 07045
Phone: (973) 334-4422
Facsimile: (973) 334-2866
fpiiiesq@optonline.net

OF COUNSEL:
Mark W. Smith, Esq.
SMITH VALLIERE PLLC
75 Rockefeller Plaza, 21st Floor
New York, New York 10019
Phone: (212) 755-5200
Facsimile: (212) 755-5203
msmith@svlaw.com

*Attorneys for Plaintiffs*
*Lawrence D. Blatterfein,*
*Buck Foston's New Brunswick LLC,*
*and Foston's New Brunswick Realty, LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

-----------------------------------------------------------------x
BUCK FOSTON'S NEW BRUNSWICK, LLC, :
LAWRENCE D. BLATTERFEIN, and FOSTON'S :
NEW BRUNSWICK REALTY, LLC, :
: Case No. 3:11-cv-03731-FLW-TJB
:
Plaintiffs, :
:
    - against -    :
:
JAMES M. CAHILL, Individually and as Mayor of :
the City of New Brunswick, New Jersey, and CITY :
OF NEW BRUNSWICK, NEW JERSEY, :
:
Defendants. :
-----------------------------------------------------------------x

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF THEIR REQUEST FOR A TEMPORARY RESTRAINING ORDER,
<u>PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY</u>**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ............................................................................................................... 2

POINT I
      PLAINTIFFS HAVE SHOWN A LIKELIHOOD OF SUCCESS ON THE MERITS ...... 3

      A.    Defendants' Actions Were Committed With The Purpose And Intent To Deprive Plaintiffs Of Their Right To Freedom Of Speech And Expression .......................................... 3

      B.    Defendants' Proffered "Defense" Is Designed To Deflect The Court's Attention From Defendants' Unlawful Conduct ................................. 4

           1.    Defendants Commenced Their Review Of Plaintiffs' Application Over Four Months Ago In April 2011 ..................................... 5

           2.    Defendants' Pretextual Excuses Do Not Explain Defendants' Unlawful Delay In Processing Plaintiffs' Liquor License Application ..................................... 7

POINT II
      PLAINTIFFS WILL SUFFER IRREPARABLE HARM IF INJUNCTIVE RELIEF IS NOT GRANTED ................................................. 11

POINT III
      THE BALANCE OF HARDSHIPS FAVORS PLAINTIFFS ......................................... 11

POINT IV
      PLAINTIFFS' REQUESTED RELIEF IS IN THE PUBLIC INTEREST ....................... 12

POINT V
      THE *YOUNGER* ABSTENTION DOCTRINE IS NOT APPLICABLE ....................... 12

CONCLUSION .......................................................................................................... 15

# TABLE OF AUTHORITIES

Page

**Cases**

*Anderson v. Davila*,
  125 F.3d 148 (3d Cir. 1997) ............................................................................................ 11

*Anthony v. Council*,
  316 F.3d 412 (3d Cir. 2003) ............................................................................................ 15

*Brown v. City of Pittsburgh*,
  586 F.3d 263 (3d Cir. 2009) ............................................................................................ 13

*Carey v. City of Wilkes-Barre*,
  410 Fed. Appx. 479 (3d Cir. Feb. 8, 2011) ...................................................................... 13

*Child Evangelism Fellowship of N.J., Inc. v. Stafford Twp. Sch. Dist.*,
  386 F.3d 514 (3d Cir. 2004) ............................................................................................ 13

*Diamond "D" Constr. Corp. v. McGowan*,
  282 F.3d 191 (2d Cir. 2002) ............................................................................................ 15

*Gundermann & Gundermann Ins. v. Brassill*,
  46 A.D.3d 615 (2d Dep't 2007) ....................................................................................... 11

*Judice v. Vail*, 430 U.S. 327 (1977) ................................................................................ 13, 14

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n*,
  457 U.S. 423 (1982) ................................................................................................... 13, 14

*Miller v. Mitchell*,
  598 F.3d 139 (3d Cir. 2010) .............................................................................................. 3

*Nat'l City Mortg. Co. v. Stephen*,
  2011 U.S. App. LEXIS 15032 (3d Cir. July 22, 2011) .................................................... 13

*O'Hagan v. United States*,
  86 F.3d 776 (8th Cir. 1996) ............................................................................................. 11

*Penzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987) ................................................................ 13, 14

*Williams v. Gov't of the V.I. Bd. of Med. Examiners*,
  360 Fed. Appx. 297, 2010 U.S. App. LEXIS 675  (3d Cir. 2011) .................................. 15

Plaintiffs Buck Foston's New Brunswick, LLC, Lawrence D. Blatterfein, and Foston's New Brunswick Realty, LLC (together, "Plaintiffs") submit this Reply Memorandum of Law in further support of their Emergency Motion.[1]

## PRELIMINARY STATEMENT

Defendants' entire defense is predicated on their erroneous assertion that the only two relevant issues here are the time constraints imposed on the City of New Brunswick for processing Plaintiffs' application, and Plaintiffs' remedies for breach of same. (Opp. Ltr. at 3.) Defendants' argument misses the point.

The issue here is not whether Defendants have complied with New Jersey's rules and regulations governing their review of Plaintiffs' liquor license transfer application but, rather, whether Defendants have intentionally and unlawfully derailed Plaintiffs' application because they don't like the name "Buck Foston's." As discussed below, the answer to this question is a resounding "YES." The statutory time frames relied upon by Defendants are red herrings. The question is, are Plaintiffs being treated differently – and worse – than other applicants because of their business name and their willingness to speak out against the City on this issue.

Defendants would have this Court believe that they were not even permitted to act on Plaintiffs' application until Defendants received Plaintiffs' Tax Clearance Certificate, or that the investigation being conducted by the Police Department was somehow dependent upon Defendants' receipt of Plaintiffs' Tax Clearance Certificate. Neither is the case. Defendants completed substantial portions of the necessary review *prior* to receiving the Tax Clearance Certificate, even though they misleadingly argue that Plaintiffs' application was not "complete" until that date. And documents obtained by Plaintiffs through an OPRA request show that many

---

[1] Submitted along with this Memorandum of Law are the Reply Declaration of Larry Blatterfein, sworn to August 10, 2011 (the "Blatterfein Reply Decl.") and the Declaration of Jerry Sorrentino, sworn to August 10, 2011 (the "Sorrentino Decl.").

applicants are *approved* by the Police Department *before* Tax Clearance Certificates are even received.

Defendants' opposition is also rife with pretextual excuses none of which credibly explain the period of extreme delay concerning Defendants' review of Plaintiffs' liquor license transfer application – which was not present in other cases where Defendants presumably did not object to the business names proposed by the applicants. In fact, several of Defendants' purported excuses have been shown to be false by Defendants' own documents, which further call into question the sworn testimony of Detective Michael DeBonis concerning the "fair and reasonable" nature of the Police Department's investigation.

Plaintiffs have demonstrated that they are entitled to injunctive relief. The facts in this case clearly establish that Plaintiffs will likely succeed on the merits; that they will be irreparably harmed if an injunction is not granted; that the balance of hardships weighs in Plaintiffs' favor; and that the granting of injunctive relief is not contrary to the public interest. Nothing in Defendants' opposition refutes Plaintiffs' claims.

## ARGUMENT

In their moving papers, Plaintiffs supplied ample evidence that Defendants are illegally discriminating against Plaintiffs by delaying the liquor license transfer process because Defendants do not like the name Plaintiffs have selected for their anticipated sports bar and restaurant. In their opposition, Defendants do not deny that they are in fact punishing Plaintiffs on the grounds that they do not like the name. Instead, Defendants attempt to distract the Court from Defendants' underlying constitutional violations by offering irrelevant general statements about the liquor license process, half-truths about Defendants' own past practices in conducting those processes, and mischaracterizations about the Emergency Motion. For good reason,

Defendants do not want this Court to evaluate Defendants' treatment of Plaintiffs' fundamental constitutional rights until it is too late.

The simple truth is that Defendants are treating Plaintiffs' application differently than those of other liquor license applicants. As demonstrated by Defendants' own documents, the only credible explanation for this different treatment is that Defendants are illegally trying to coerce Plaintiffs to change the name Buck Foston's – a name Defendants have expressly stated they disapprove of – or face the irreparable loss of their valuable business opportunity. This is precisely the type of illegal conduct that warrants injunctive relief in federal court.

## POINT I

### PLAINTIFFS HAVE SHOWN A LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiffs must show that Defendants' actions have been under color of state law, and that Defendants' acts deprived Plaintiffs of their right to freedom of speech and expression under the federal and New Jersey constitutions. *See Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010).

Plaintiffs have met their burden.

#### A.  Defendants' Actions Were Committed With The Purpose And Intent To Deprive Plaintiffs Of Their Right To Freedom Of Speech And Expression

Defendants' review of Plaintiffs' liquor license transfer application should have been a routine, uneventful affair, but Plaintiffs' application remains pending *more than 17 weeks* after it was submitted in April 2011. While Defendants have undertaken Herculean efforts to explain away their illegal conduct, Defendants submit no proof directly refuting Plaintiffs' allegations.

Noticeably absent from Defendants' opposition is a sworn statement from James M. Cahill, the Mayor of the City of New Brunswick who, on at least two occasions, expressed his strong dislike of the name "Buck Foston's." (*See* Compl. ¶¶ 35, 36). Why hasn't Mayor Cahill – *a defendant in this lawsuit* – expressly refuted Plaintiffs' claims? Good question.

3

Even the sworn certification submitted by Detective Michael DeBonis falls short. While Detective DeBonis offers a self-serving statement that he has "never delayed the processing" of his investigation nor been "asked to" or been "intimidated to" delay his investigation (*see* Certification of Detective Michael DeBonis ("DeBonis Cert.") at ¶¶ 6-8), he does not and cannot explain why he has not completed an investigation commenced on April 28, 2011, concerning Larry Blatterfein, an individual who has held a liquor license issued by the City of New Brunswick for nearly 30 years, and Jerry Sorrentino, a 36-year veteran of the New York/New Jersey Port Authority Police Department.

While this fact is shocking in itself, it becomes even more incredible when viewed against Defendants' past pattern and practice of processing other liquor license transfer applications. Although this Court has yet to rule on Plaintiffs' request for expedited discovery, Plaintiffs have obtained documents from Defendants in response to an OPRA request. As more fully discussed below, these documents, while only the tip of the iceberg, completely refute Defendants' claims that Plaintiffs' application is being handled consistently with other applications that do not involve names to which Defendants object. The vast disparity in Defendants' treatment of Plaintiffs' application corroborates Plaintiffs' allegations that the delay in processing their application is the result of a constitutionally-prohibited effort to deny Plaintiffs' free speech rights under the First Amendment and the New Jersey Constitution. This alone justifies Plaintiffs' outstanding request for narrowly-tailored discovery concerning Defendants' motive and unlawful conduct.

### B. Defendants' Proffered "Defense" Is Designed To Deflect The Court's Attention From Defendants' Unlawful Conduct

Defendants' strategic attempt to oversimplify the issues in this case misses the mark. Following Defendants' twisted logic, so long as they act upon Plaintiffs' application on or before

4

September 14, 2011 (or 60 days from the date that they received Plaintiffs' Tax Clearance Certificate), Plaintiffs cannot succeed on the merits of their constitutional claims. Defendants are wrong. As illustrated below, their defense, which is designed to deflect this Court's attention from their unlawful conduct, falls tragically short of refuting Plaintiffs' claims.

1. **Defendants Commenced Their Review Of Plaintiffs' Application Over Four Months Ago In April 2011**

Defendants' opposition makes absolutely no mention of the review efforts undertaken by them *prior to July 14, 2011*, when they argue Plaintiffs' application was "complete." Indeed, Defendants have argued (and would have this Court believe) that they were not even *permitted* to act on Plaintiffs' application until Defendants' received Plaintiffs' Tax Clearance Certificate, or that Detective DeBonis's investigation was somehow dependent upon Defendants' receipt of the Tax Clearance Certificate. (Opp. Ltr. at 7.) That is clearly not the case.

Defendants do not – and cannot – dispute that Plaintiffs' liquor license transfer application was forwarded to the City of New Brunswick on or about *April 5, 2011, some three months before* the State of New Jersey issued Plaintiffs' Tax Clearance Certificate on July 1, 2011. (*See* Declaration of James F. Clarkin III, sworn to August 2, 2011 (the "Clarkin August 2 Decl.), Exhibit A). Defendants also cannot dispute that, *as early as April 28, 2011, less than four weeks later*, Defendants had begun reviewing Plaintiffs' application as evidenced by an "Investigation Request" prepared on April 28, 2011 by the City Clerk of the City of New Brunswick. (*See* Blatterfein Reply Decl., Ex. G.)

The Investigation Request, which forwarded a copy of Plaintiffs' 12-page liquor license transfer application, was directed to those individuals/departments whose approval was necessary to transfer the liquor license to Plaintiffs. (*Id.*) In addition to Detective DeBonis, the Investigation Request was sent to: William J. Hamilton, Jr. (City Attorney); Kenneth Krug (Fire

5

Protection Subcode); Glenn Patterson (Zoning); Dominic Quagliata (Fire Official); and William Schrum (Construction Official). (*Id.*)

Tellingly, as of June 9, 2011, *only* Detective DeBonis had yet to approve Plaintiffs' application. Messrs. Hamilton, Patterson and Schrum approved Plaintiffs' liquor license transfer application within weeks of it being submitted on or before June 7, 2011. (*Id.* at Ex. H.) Two days later, Kenneth Krug approved Plaintiffs' application. (*Id.*) Dominic Quagliata, the only other approval outstanding as of June 9, 2011, subsequently issued his approval for the transfer. (*Id.*) Thus, as of July 14, 2011, when the City of New Brunswick received Plaintiffs' Tax Clearance Certificate, the only approval still outstanding was that of the Police Department which, notwithstanding Defendants' suggestions to the contrary, had begun reviewing Plaintiffs' application months earlier.

Indeed, an April 28, 2011 e-mail from the City Clerk to James Clarkin, Plaintiffs' counsel, confirms that the City Clerk had alerted Plaintiffs to "issues" concerning the background check to be performed by Detective DeBonis. Specifically, Mr. Blatterfein's partner, Jerry Sorrentino, would have to be fingerprinted, and Plaintiffs would be required to submit an investigation form and fee for Mr. Sorrentino. (*Id.* at Ex. I.) The April 28 e-mail further advised that a copy of Plaintiffs' application had been delivered to Detective DeBonis, and that Detective DeBonis would "contact [them] for any outstanding items." (*Id.*)

Mr. Sorrentino was fingerprinted on May 19, 2011, in response to the City's April 28, 2011 e-mail, and on or before that date Plaintiffs submitted the requested investigation form and fee. (Sorrentino Decl. at ¶ 5; Blatterfein Reply Decl. ¶ 26.) On May 19, 2011, Detective DeBonis told Mr. Sorrentino that it would take at most "a couple of weeks" for the Police

Department to complete its review of Plaintiffs' liquor license transfer application. (Sorrentino Decl. at ¶ 6.) That representation was made over twelve (12) weeks ago.

There can be no doubt that Defendants' omission from their opposition of *any* discussion of their pre-July 14 review efforts was deliberate and intended to mislead the Court into believing that Defendants could not – and did not – commence their investigation before they received Plaintiffs' Tax Clearance Certification on July 14, 2011. In fact, Detective DeBonis's investigation has been active and ongoing since April 2011 and, when Defendants received Plaintiffs' Tax Clearance Certificate on July 14, 2011, the only item outstanding concerning Plaintiffs' liquor license transfer application was Detective DeBonis's investigation. Perhaps Defendants felt that their "story" would be more compelling if the Court was led to believe that no activity had been taken on Plaintiffs' application until at the earliest July 14, 2011, or that Detective DeBonis could not complete his investigation unless and until Defendants received Plaintiffs' Tax Clearance Certificate.

2. **Defendants' Pretextual Excuses Do Not Explain Defendants' Unlawful Delay In Processing Plaintiffs' Liquor License Application**

Defendants offer a number of pretextual excuses in an attempt to explain the extraordinary period of delay accompanying their review of Plaintiffs' liquor license transfer application. None of them has any merit.

First, while Defendants repeatedly object to Plaintiffs' "misguided impression" that the *only* thing the New Brunswick Police Department has yet to do is complete its background investigation (Opp. Ltr. at 2, 6), Detective DeBonis's sworn certification proves Plaintiffs' point. Defendants utterly fail to inform the Court what, other than a basic background check, is left to be done. Rather than identify for the Court (and Plaintiffs) what has and has yet to be accomplished on Plaintiffs' application, Defendants tellingly gloss over the issue. In his sworn

7

certification, Detective DeBonis states only that his investigation "includes a background investigation of Mr. Blatterfein and Mr. Sorrentino" and "a review of Mr. Blatterfein's conduct as a licensee at the premises for which he owns another license, *i.e.*, the KnightClub." (*See* DeBonis Cert. at ¶¶ 11, 12.) Detective DeBonis does not describe the extent of his background investigation to date, the quantity of data he has yet to review (if any), or when he expects to complete his investigation. In a July 28, 2011 Interoffice Memorandum from Detective DeBonis to the City Clerk, which was produced by Defendants in response to Plaintiffs' OPRA request, Detective DeBonis states that he is "conducting a *thorough* background investigation" concerning Plaintiffs' application. (*See* Blatterfein Reply Decl., Ex. M (emphasis added).) Detective DeBonis's sworn certification makes no reference to a "thorough" investigation nor does he provide sufficient detail from which this Court could conclude what he meant by that term. If ever there were a time for Defendants to explain what they have been doing for the past *seventeen weeks* and what remains to be done, this is that time.

Second, Defendants' purported "explanation" for their delay (the alleged pending investigations of Messrs. Blatterfein and Sorrentino) fails to pass muster considering that Defendants completed, to their satisfaction, their investigation of Mr. Batterfein prior to renewing his liquor license for the KnightClub in June 2011. Presumably, if there were any problems concerning Mr. Sorrentino, a 30-plus year veteran of the Port Authority Police Department, Detective Debonis would have identified them in his sworn certification. He did not.

Similarly, any issues concerning Plaintiffs' alleged construction at the KnightClub of a deck and two bars is a red herring. (*See* Debonis Cert. at ¶ 14.) As Detective Debonis concedes, those changes to the premises began in 2003 and culminated in a July 20, 2011 Resolution of the

City Council, which approved Plaintiffs' improvements. (*Id.*) If those issues were problematic, Defendants would not have renewed Mr. Blatterfein's liquor license for the KnightClub for the last eight years (*i.e.*, from 2003-2011) or passed the July 20, 2011 City Council Resolution.

Third, while Defendants contend that they were not permitted to act on Plaintiffs' application until July 14, 2011 when they received Plaintiffs' Tax Clearance Certificate (Opp. Ltr. at 3-4, 7), the documents produced by Defendants in response to Plaintiffs' OPRA request reveal that: (i) Defendants' review of Plaintiffs' application was complete except for the background check before receiving the Tax Clearance Certificate, and (ii) the New Brunswick Police Department has, *on at least three occasions*, approved an applicant's liquor license transfer *prior* to the receipt of the applicant's Tax Clearance Certificate. To illustrate:

- The Police Department approved an application submitted by an entity known as Daryl on October 4, 2006. Daryl submitted its Tax Clearance Certificate on January 24, 2007 – *over three months later*.
- The Police Department approved an application submitted by an entity known as Garibaldi's on December 17, 2004. Garibaldi's Tax Clearance Certificate was not issued by the State of New Jersey until April 13, 2005 – *over four months later*.
- The Police Department approved an application submitted by an entity known as Gambino's on October 3, 2007. Gambino's submitted its Tax Clearance Certificate on October 17, 2007 – *two weeks later*.

(*See* Blatterfein Reply Decl. at ¶¶ 5-8, 13-14, 18-21; Exs. A, C, and E.) These facts utterly refute Defendants' position that the Police Department could not have completed its background investigation before receiving the Tax Clearance Certificate on July 14, 2011.

Fourth, even if the New Brunswick Police Department had not commenced its background investigation of Messrs. Blatterfein and Sorrentino in April 2011, there is still no reasonable explanation for Defendants' inordinate delay in processing Plaintiffs' liquor license application. Detective Debonis has attested that, as an Alcoholic Beverage Enforcement Officer, he is responsible for processing approximately 80 liquor license annual renewals. (*See* Debonis

9

Decl. at ¶ 3.) Because those renewals are due by June 30 of each year, the City annually issues a Liquor License Renewal Notice to renewal applicants advising them of the deadline to submit their completed license renewal applications. (*Id.* at ¶ 4; Blatterfein Reply Decl. at ¶ 31.)

This year, the Liquor License Renewal Notice was issued on April 25, 2011, and the deadline to submit renewal applications was May 23, 2011. (*See* Blatterfein Reply Decl. at ¶ 31, Ex. N.) Because Defendants set those dates, it is reasonable to infer that the approximately 80 liquor license renewals to be processed by Detective Debonis could be completed in about five weeks (May 23 – June 30) or 29 business days, at a rate of about three renewal applications per day. Relatedly, it is also reasonable to conclude that as of June 30, 2011, Detective Debonis had processed all pending renewal applications.

Detective Debonis identifies no outstanding liquor license transfer applications other than Plaintiffs' application. Presumably, if any such applications were pending, Detective Debonis would have mentioned them in his certification in an attempt to further justify Defendants' delay.

Again, the Defendants' own documents are enlightening. They illustrate that the Police Department has repeatedly approved other applicants' liquor license transfer applications in *as little as three weeks* following the submission of a Tax Clearance Certificate. To illustrate:

- An entity known as Due Mare was issued its Tax Clearance Certificate on June 19, 2008. On July 14, 2008, *about three weeks later*, the Police Department approved Due Mare's liquor license transfer application.
- An entity known as Mike's Courtside Inn was issued its Tax Clearance Certificate on April 25, 2008. On May 19, 2008, *less than four weeks later*, the Police Department approved Mike's Courtside Inn's liquor license transfer application.

(*See* Blatterfein Reply Decl. at ¶¶ 9-12, 15-17; Exs. B, D.)

Here, given that Detective Debonis commenced his investigation of Plaintiffs in April 2011, and concluded his investigation of Mr. Blatterfein on or before June 1 when Defendants renewed his liquor license for the KnightClub, the facts support but one conclusion: Defendants

have intentionally and unlawfully delayed the referral of Plaintiffs' application to the City Council in deprivation of Plaintiffs' constitutional rights.

## POINT II

### PLAINTIFFS WILL SUFFER IRREPARABLE HARM IF INJUNCTIVE RELIEF IS NOT GRANTED

Defendants wrongfully contend that Plaintiffs' irreparable harm argument concerns "his claim of entitlement to a liquor license transfer." (Opp. Ltr. at 7-8.) There is absolutely no support in the record for Defendants' position. Plaintiffs do not ask the Court to grant them a liquor license, but ask the Court to enjoin Defendants from their ongoing unconstitutional conduct in punishing Plaintiffs by delaying the issuance of the Police Department investigation.

As Plaintiffs made clear in their moving papers, Defendants' refusal to timely process Plaintiffs' liquor license transfer application threatens Plaintiffs with irreparable harm in the nature of (i) the continuing deprivation of their First Amendment rights (*see, e.g., Anderson v. Davila*, 125 F.3d 148 (3d Cir. 1997)); (ii) the loss of a unique and irreplaceable business opportunity (*see, e.g., Gundermann & Gundermann Ins. v. Brassill*, 46 A.D.3d 615 (2d Dep't 2007)); and (iii) a lost opportunity to acquire real estate or real property (*O'Hagan v. United States*, 86 F.3d 776, 783 (8th Cir. 1996)). Plaintiffs do not claim that they are automatically entitled to a liquor license but, rather, that unless injunctive relief is awarded, Defendants' long and unexplained delay in processing what should be a routine application will certainly cause Plaintiffs to sustain irreparable harm.

## POINT III

### THE BALANCE OF HARDSHIPS FAVORS PLAINTIFFS

Defendants' assertion that the balance of hardships tips in their favor strains credulity. (Opp. Ltr. at 8-9.) Stated simply, it is inconceivable how – under any set of circumstances –

requiring Defendants to complete a routine investigation commenced nearly four months ago somehow compares to the enormous hardship Plaintiffs will suffer if Defendants are permitted to continue to deprive Plaintiffs of their constitutional rights.  Not only is Plaintiffs' project in jeopardy because of Defendants' unlawful conduct, but Plaintiffs stand to lose hundreds of thousands of dollars along with a once-in-a-lifetime business opportunity.  Defendants will suffer no hardship from this Court directing the Police Department to stop their unconstitutionally-motivated delay and allow the City Council to approve or disapprove Plaintiffs' application.

## POINT IV

### PLAINTIFFS' REQUESTED RELIEF IS IN THE PUBLIC INTEREST

Similarly without merit is Defendants' argument that the injunctive relief being sought by Plaintiffs does not advance the public interest.  (Opp. Ltr. at 9.)  Again, Defendants have incorrectly characterized the nature of the relief requested.  Plaintiffs ask this Court to compel Detective Debonis (and Defendants) to immediately complete their investigation and place Plaintiffs' application on the New Brunswick City Council agenda *for a vote on the merits*.  Plaintiffs are not asking the Court to impinge on the duties entrusted to the City to regulate the distribution of alcoholic beverages within the municipality.  Where, as here, the facts demonstrate no lawful or rational basis for Defendants' extraordinary delay, the public interest weighs heavily in favor of preventing the deprivation of Plaintiffs' constitutional rights.

## POINT V

### THE *YOUNGER* ABSTENTION DOCTRINE IS NOT APPLICABLE

Contrary to Defendants' assertions, Plaintiffs are not asking this Court to usurp the authority of the Director of the Division of Alcoholic Beverage Controls or the authority of the New Jersey state courts.  (Opp. Ltr. at 8.)  While Plaintiffs certainly reserve their right to challenge any denial of their liquor license transfer application, Plaintiffs ask only that this Court

compel Defendants to complete forthwith their review of Plaintiffs' application so that it can be placed on the City Council's agenda. When this simple fact is understood, Defendants' desperate – and legally defective – attempt to invoke the extreme remedy of abstention fails.[2]

"A federal court has a 'virtually unflagging obligation' to exercise its jurisdiction ... It may abstain from exercising jurisdiction only when the 'clearest of justifications ... warrant[s] [it].' ... " *Nat'l City Mortg. Co. v. Stephen*, 2011 U.S. App. LEXIS 15032 at *9 (3d Cir. July 22, 2011) (citations omitted). "[A]bstention is 'an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it,' and may be used 'only in exceptional circumstances ....'" *Id.*

The *Younger* doctrine is applicable where a plaintiff asks a federal court to intervene while a state court proceeding is pending and the relief requested would affect the outcome of the proceeding or prevent the state court from taking some action. In the cases cited by Defendants where the *Younger* doctrine applied, the federal court lawsuit would either affect, or dictate the outcome of, a state court proceeding.[3] That simply is not the case here. Defendants do not cite a single case where the *Younger* doctrine has been applied to prevent a federal court from requiring a municipality or court to complete their proceedings in a timely fashion, and for good reason – such a ruling would not interfere in the outcome of the process in any way.

---

[2]    *Federal* courts regularly grant injunctions requiring municipalities to issue permits where the municipality's failure to do so violates the applicants' First Amendment rights. *See Brown v. City of Pittsburgh*, 586 F.3d 263 (3d Cir. 2009) (reversing district court's denial of injunction barring enforcement of municipal statute infringing on First Amendment free speech rights); *Child Evangelism Fellowship of N.J., Inc. v. Stafford Twp. Sch. Dist.*, 386 F.3d 514 (3d Cir. 2004) (affirming district court's grant of preliminary injunction barring municipality from preventing plaintiff from distributing materials and participating in "back-to-school" nights where municipality's conduct infringed on plaintiff's First Amendment free speech rights). Municipalities are also liable where they take retaliatory action against individuals for exercising their First Amendment rights of free speech. *See Carey v. City of Wilkes-Barre*, 410 Fed. Appx. 479 (3d Cir. Feb. 8, 2011).

[3]    *See Penzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987) (vacating district court order enjoining enforcement of state court judgment); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) (attorney challenged constitutionality of ethics rule that was subject of state attorney disciplinary proceeding against him); *Judice v. Vail*, 430 U.S. 327 (1977) (judgment debtor challenged constitutionality of contempt rules that were the subject of state court contempt proceeding against him).

Defendants concede that the *Younger* doctrine applies only where (i) there are ongoing state proceedings "of a judicial nature," (ii) the state proceedings implicate important state interests, and (iii) the state proceedings afford an adequate opportunity to raise federal claims. (Opp. Ltr. at 8.) None of these considerations exist here.

First, the proceedings "of a judicial nature" contemplated by the doctrine are generally criminal or penal in nature. Defendants tacitly acknowledge this when they misleadingly argue that the license approval process is akin to a criminal proceeding, and that Plaintiffs are essentially "asking a court to throw out a *conviction* before the jury has even returned a verdict." (*Id.* (emphasis added).)[4] Here, the proceeding at issue is a municipal licensing proceeding, not a disciplinary or criminal proceeding.

Second, the relief sought by Plaintiffs does not implicate "important state interests" – unless Defendants claim that the State of New Jersey has an "important interest" in unconstitutionally delaying a decision on Plaintiffs' application and destroying Plaintiffs' unique business opportunity. While New Jersey undoubtedly has an interest in ensuring that its ABC laws are properly administered, Plaintiffs' requested relief will not interfere with that interest because Plaintiffs do not ask the Court to compel Defendants to approve their application.

Third, Plaintiffs *will not* have an adequate opportunity to pursue through the state appellate process their constitutional claim. Defendants fail to explain how Plaintiffs could effectively challenge the current delay by the Police Department in processing the transfer application absent immediate federal court intervention.

---

[4] The cases cited by Defendants, to the extent they are relevant at all, confirm this. *See Middlesex County Ethics Comm.*, 457 U.S. 423 (disciplinary proceeding proffering of charge of ethical violations against attorney); *Judice*, 430 U.S. 327 (state court contempt proceeding); *Penzoil Co.*, 481 U.S. 1 (plaintiff sought to enjoin enforcement of state court judgment).

Finally, *Younger* abstention should not be invoked where, as here, the Plaintiffs will suffer irreparable injury if the Court abstains from hearing their claim and extenuating circumstances exist. *See, e.g., Anthony v. Council*, 316 F.3d 412, 418 (3d Cir. 2003). Clearly, the factors set forth above, in combination with the irreparable injury that will be suffered by Plaintiffs if Defendants are allowed to further delay the processing of Plaintiffs' application, constitute extenuating circumstances that warrant the Court's consideration of their claims.[5]

## CONCLUSION

For these reasons and the reasons set forth in Plaintiffs' moving papers, Plaintiffs respectfully request that the Court issue an order: (i) granting Plaintiffs expedited discovery in aid of Plaintiffs' order to show cause for a temporary restraining order/preliminary injunction; (ii) directing Defendants to issue a decision with respect to Plaintiffs' liquor license transfer application forthwith; and (iii) awarding Plaintiffs such other and further relief as it deems just and proper, including, but not limited to, costs for this motion and or other monetary sanctions pursuant to an appropriate order of Court.

Dated: August 10, 2011
Montville, New Jersey

/s/
Frank Pisano III
NEEDLEMAN and PISANO
161 Main Road, P.O. Box 187
Montville, NJ 07045
Phone: (973) 334-4422
Facsimile: (973) 334-2866
fpiiiesq@optonline.net

---

[5] Notably, the *Younger* doctrine may not be applied where the state tribunal is biased against the plaintiff. *See, e.g., Williams v. Gov't of the V.I. Bd. of Med. Examiners*, 360 Fed. Appx. 297, 2010 U.S. App. LEXIS 675 (3d Cir. 2011) (*Younger* abstention may not be invoked "when the state administrative agency was incompetent by reason of bias to adjudicate the issues pending before it") (citing *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 201 (2d Cir. 2002)). In this case, Defendants, who have improperly delayed processing Plaintiffs' application, have clearly demonstrated their bias against Plaintiffs. (*See* Compl. at ¶¶ 35, 36.)

OF COUNSEL:

Mark W. Smith, Esq.
SMITH VALLIERE PLLC
75 Rockefeller Plaza, 21st Floor
New York, New York 10019
Phone:  (212) 755-5200
Facsimile:  (212) 755-5203
msmith@svlaw.com

*Attorneys for Plaintiffs*
*Lawrence D. Blatterfein,*
*Buck Foston's New Brunswick LLC,*
*and Foston's New Brunswick Realty, LLC*